**Dated: April 16, 2019**

**The following is ORDERED:**



TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
RUSSELL SCOTT CLARK                           Case No. 18-81371-TRC
CHERYN BLAIR CLARK                            Chapter 7

                              Debtors.

### ORDER GRANTING DEBTORS' MOTION TO CONVERT TO CHAPTER 11

Before the Court is Debtors' Motion to Convert their Chapter 7 case to Chapter 11

(Docket Entry 41). The Court held an evidentiary hearing on this matter on March 5, 2019.

After the hearing, the parties attempted to reach an agreement on the issues surrounding

conversion but were unable to do so. The Court then took this matter under advisement. After

review, this Court finds that Debtors should be allowed to convert their case to Chapter 11. The

Court also approves the appointment of a trustee based upon the parties' agreement that this is

the best way to proceed in this case.

**Background**

Debtors filed this case as an "emergency" chapter 13. Their schedules reflected that their

debt exceeded the limit for a chapter 13 debtor so the Chapter 13 Trustee moved to convert the

case to chapter 7, or alternatively to chapter 11.  No one for Debtors appeared at the hearing on the Trustee's Motion to Convert so the Court granted Trustee's Motion and converted to chapter 7 on Trustee's recommendation.  After the hearing, Debtors sought to reconsider the order converting to chapter 7 rather than to chapter 11.  This Court treated their motion to reconsider as a motion to convert to chapter 11 and gave notice that an evidentiary hearing would be held.  A 2004 exam of Debtors was conducted by the chapter 7 Trustee prior to the evidentiary hearing.  One of Debtors' secured creditors, First National Bank of Heavener ("FNB"), opposed conversion to chapter 11, alleging that Debtors' bankruptcy case was not filed in good faith as it was filed to stop FNB's foreclosure action, and expressed doubts that Debtors could propose and fund a confirmable chapter 11 plan.  Appearing at the evidentiary hearing were Debtors and their counsel, FNB representatives and its counsel, Chapter 7 Trustee Charles Greenough, and Bonnie Hackler, Trial Attorney for the U.S. Trustee.

Prior to this Court converting the chapter 13 to chapter 7, FNB filed a Motion for Relief from the Stay and Abandonment (Docket Entry 35).  Debtors objected.  An evidentiary hearing was held jointly with Debtors' motion to convert to chapter 11.  The Court will enter a separate order regarding that motion.

**Findings of Fact**

Chris Ward, Chief Lending Officer and Executive Vice-President for FNB, testified regarding the Debtors' transactions with FNB.  Debtors' had five loans in existence at the time of filing.  All were in default, and FNB had declared the total amounts due.  A state court foreclosure action was commenced two days before the bankruptcy filing.  A separate foreclosure case had been concluded in Sequoyah County in August of 2018, resulting in a judgment of foreclosure regarding Loan 2045.  The day Debtors filed bankruptcy, a hearing had been

scheduled in state court regarding a deficiency judgment to be entered in that foreclosure case. Prior to filing, some of Debtors' property had been liquidated to reduce their debt to FNB.

Ward reviewed the five loans. Loan 2045, original amount of $786,000, was secured by a generator and six lots on Kerr Lake, Sequoyah County. Ward described the lake lots as vacant land with no utilities or structures. He estimated each lot's value at $10,000 to $20,000. The balance on this note after the foreclosure and Sheriff's Sale was $282,154. FNB valued the secured portion of this claim at $10,000, which was Debtors' valuation of the generator on their schedules. FNB's motion for relief from the stay states that all collateral on this loan has been liquidated. FNB filed a Statement of Judgment in Sequoyah County regarding all real estate owned by Debtors in that county. This loan is guaranteed by the Farm Service Agency of the United States Department of Agriculture.

Loan 1992, dated August 15, 2015, was for $40,000. This loan originated in 2009 but was refinanced and modified several times. This loan was secured by real estate in Sequoyah County, identified on FNB's proof of claim as three lots on Kerr Lake. FNB's claim on this loan is $41,066.92, of which it valued the secured portion at $30,000.

Loan 2072 was for $20,465.62 secured by a 2009 Deutz tractor. FNB repossessed the tractor prior to the Petition date but has not sold it. FNB is owed $11,209.43 on this note and valued the tractor at $10,000.

Russell Clark and Debtors' son Chance Clark are co-borrowers on Loan 1923. This note originated in 2015 for $345,000, and is secured by timber and a mortgage on 209 acres in Sequoyah County owned by Chance. Note 1923 also indicates that Debtors would mortgage 27067 Reichert Summerfield Road, Heavener, Oklahoma (LeFlore County) as additional security for this note. FNB's proof of claim regarding this debt is for $342,672.38, all unsecured. No

payments have been made on this note.

The last note reviewed was Loan 2000, by co-borrowers Russell and Chance Clark, originally for $123,000. Chance pledged farm products as collateral. Debtors Russell and Cheryn Clark also granted a mortgage on three Kerr Lake lots as additional security. FNB's claim against Debtors on this loan is $82,961.44. FNB valued the collateral as $0, making this a wholly unsecured claim. According to FNB's motion to lift stay, this loan is guaranteed by the Farm Service Agency.

Ward had viewed the lake lots the day before the evidentiary hearing. He noted two houses nearby, with no other development in the area. A dirt road led to the lots themselves. Ward acknowledged that Debtors may be able to sell the Kerr Lake lots for more than $10,000 each and that a private sale may bring more than a foreclosure sale in most cases. However, even if the lake lots sold for Debtors' estimated value of $25,000 each, that amount would not satisfy their debt to FNB of $369,000.

Debtor Russell Clark testified that he and his wife had been chicken farmers since 1993, and also raised cattle. The poultry operation ceased two years ago when OK Foods terminated their contracts, as well as those of other farmers in their area. Clark believes that OK Foods supplied them with infected chickens; OK Foods blamed the farmers for the poor condition of the chickens. Debtors are also in the commercial fishing business, with operations in Alaska since 2002. They do not intend to resume poultry or cattle operations, but intend to focus on salmon fishing in Alaska. They wish to keep enough property in Oklahoma to live on during the off season, and to sell the rest of their property to pay their debts.

Clark estimated that their debt to FNB had reached $1.6 million but that they had reduced the debt to approximately $300,000 shortly before filing bankruptcy by selling property and

making payments.  They liquidated over $200,000 in certificates of deposit pledged to FNB, which funds were from an inheritance.  He estimated the value of the lake lots at $25,000 to $30,000 each and has listed the lots for sale for $30,000 on Facebook.  The lots are waterfront, and have access to electricity.  Prior to the evidentiary hearing, Debtors entered into a contract to sell three lake lots to one buyer at $25,000 each, for a total of $75,000.  However, the buyer's financing fell through and the buyer is only able to purchase one lot at $25,000.  Clark stated that he was hoping to sell other lots to the buyer's parents.  Debtors object to surrender of these lots to FNB because they believe they can sell these lots for more than FNB will obtain.

Debtors' also own other real estate, some of which is unencumbered.  They own seventeen acres adjoining the lake lots, and intend to use this property during the offseason for their fishing operation to repair nets and equipment.  Their homestead in Heavener (27067 Reichert Summerfield Road, LeFlore County) includes 118 acres, 78 of which are for sale for $210,000. A previous contract to sell this acreage is yet to close.  They have a verbal agreement with the secured creditor, Bank of the Ozarks, to retain $50,000 of the proceeds to use in their fishing operations.  Across the road from this property (27062 Reichert Summerfield Road), Debtors own 53 acres, including a home, three broiler houses, a shop and barn.  This property is listed with a Ft. Smith realtor for $280,000, and was shown to potential buyers recently.  They also own 42 acres with two non-operational chicken houses that is listed for sale with a realtor for $135,000 (Yellow Springs Road, LeFlore County).  This property, along with their residence, is pledged to Bank of the Ozarks.  They own real estate in Alaska, including a home in Kenai where they live during fishing season valued at $75,000, and a one-room cabin and five acres valued at $27,000.

Debtors have two lifetime commercial salmon fishing permits issued by the State of

Alaska. Each permit allows them to have two leases annually. They estimate the value of their four salmon fishing leases at $68,000. They move to Alaska in late May for salmon fishing season and return to Oklahoma in October. They each fish in different locations in Cook Inlet, have four boats and four to six employees. They provided past and future forecasts for salmon fishing published by the Alaska Department of Fish and Game. The 2019 forecasts are for a higher than average harvest.

If allowed to convert to chapter 11, Debtors propose to sell the Yellowsprings Road property, the 27062 Reichert Summerfield Road property and three Kerr Lake lots, and pay all of those proceeds to FNB. Currently, they have no income but anticipate selling real estate and having an increase in income from fishing operations based upon the favorable projections for the 2019 season. Russell also proposes to work on a stone crab fishing crew in Florida during the winter months. He estimated his income from that endeavor to be $1,500 to $2,000 per week less weekly expenses of $400.

Bonnie Hackler, Trial Attorney for the U.S. Trustee, stated that her office has concerns regarding Debtors' income and ability to manage the duties of a debtor in possession in a chapter 11. Debtors' income has steadily declined since 2016. Their net profit from the fishing operation in 2017 was $20,165. Figures for 2018 were not finalized but at present there is no income stream. Debtors pledged to make adequate protection payments to FNB but would need to sell property to generate income. The U.S. Trustee could support a chapter 11 with an appointed trustee. Chapter 7 Trustee Greenough advised the Court that if Debtors stay in chapter 7, he would liquidate their properties but the likely buyer for the fishing permits is the Debtors. He believes that because Debtors have significant assets, there would be a full payout of their debts in either chapter 7 or 11, and that they have less than $20,000 in non-FNB unsecured debt.

Both Greenough and Hackler believed that FNB is fully secured. Greenough observed that the properties Debtors are attempting to sell have only been on the market for a short time. He believed that Debtors should be given more time to sell those properties.

**Conclusions of Law**

Bankruptcy courts retain wide discretion in determining whether to grant a motion to convert. As movants, Debtors must show by a preponderance of the evidence that conversion to chapter 11 is the best option for all parties. Courts typically consider a number of factors in considering conversion to chapter 11, including the purpose of an 11 of rehabilitation of debtors and maximization of estate assets. In this case, Debtors argue that they have more than sufficient assets to pay FNB and other creditors but they believe allowing them time to market and sell these assets will net more funds to pay creditors than if such properties are sold at a sheriff's sale. They offered as evidence a contract for sale of one lake lot for $25,000, which is well above FNB's estimated value of these lots.

Debtors should exhibit good faith and an ability to reorganize. FNB questions Debtors' good faith since they filed bankruptcy on the day of a scheduled deficiency judgment hearing. FNB also questioned Debtors regarding prepetition transfers of property by Debtors to their children. Debtors adequately explained the transfers to the Court. Filing bankruptcy to invoke the automatic stay is a common factor in many bankruptcies. The Court does not find that Debtors have exhibited bad faith at this stage that would prevent conversion.

Debtors should exhibit the ability to propose a confirmable plan. The Court is concerned that there is no steady income stream at this time. However, the Court believes the evidence shows that Debtors have the ability to generate sufficient income in the near future that will allow all creditors to be paid, while allowing Debtors to retain their fishing licenses and continue

their fishing operations.

Maximization of assets is a primary consideration. Debtors agree that they will need to liquidate most of their assets if their case is converted to chapter 11. If conversion is simply to delay liquidation rather than to maximize assets for the benefit of creditors, then remaining in chapter 7 may be more appropriate. However, the Court believes that maximization of assets is more likely if Debtors are allowed to convert to chapter 11. As acknowledged by the Chapter 7 Trustee, it is likely that the only potential buyers for the fishing permits are Debtors themselves. He also believes that Debtors should be allowed some time to market and sell their properties. This course should bring a higher sales price than a foreclosure sale. Thus, conversion to chapter 11 should maximize Debtors' assets to the benefit of all creditors. Greenough and Hackler agreed that the two secured creditors, Bank of the Ozarks and FNB, will be paid in full whether Debtors stay in chapter 7 or convert to chapter 11. The Court believes conversion to chapter 11 will benefit unsecured creditors and allow Debtors to rehabilitate their operations.

Other factors to consider regarding conversion are Debtors' management skills and history regarding protection of their property. Debtors stated that they do not insure their equipment in Alaska but that it is locked and stored in a secure location. When they reside and work in Alaska, they carry insurance as required by law. The Court has concerns that Debtors have not presented a budget. The Court shares the U.S. Trustee's concerns about Debtors' ability to manage the estate in chapter 11 when they are in Alaska. The Court is also concerned that chapter 11 is expensive and administrative costs may offset or negate the payout to unsecured creditors. However, it appears to the Court that Debtors are making a sincere effort to maximize assets for creditors, and have an opportunity to expand their fishing operations to offset loss of their poultry and cattle operations.

The Court finds that Debtors have shown by a preponderance of the evidence that their motion to convert to chapter 11 should be granted.  Having reviewed the evidence, the Court believes that the purpose of a chapter 11 of rehabilitation of Debtors and maximization of estate assets will best be accomplished in an 11 rather than a 7.  The Court believes that because Debtors have significant assets, their secured creditors appear fully secured, Debtors have fishing operations that have the potential to provide sufficient income, and because Debtors have demonstrated significant expertise and experience in the fishing business, they should be allowed to convert and given the opportunity to continue in chapter 11.

Bankruptcy courts also retain wide discretion regarding the appointment of a trustee in place of a debtor in possession in a chapter 11 case.  Here, the U.S. Trustee's office expressed the opinion that the Clarks may face significant difficulties managing their duties and responsibilities as debtors in possession because they will soon be moving to Alaska for salmon fishing season.  Debtors have agreed to the appointment of a trustee in this case.  The Court agrees that the appointment of a trustee offers the best opportunity for success for these debtors in chapter 11, therefore the Court concludes that the U.S. Trustee's office should proceed to appoint a trustee subject to this Court's approval in accordance with 11 U.S.C. § 1104(d) and Fed. R. Bankr. P. 2007.1.

## Conclusion

IT IS THEREFORE ORDERED that Debtors' Motion to Convert from Chapter 7 to Chapter 11 (Docket Entry 41) is hereby  **granted.**

IT IS FURTHER ORDERED that upon conversion a trustee shall be appointed in this case.

###